# UNITED STATES DISTRICT COURT

## DISTRICT OF NEW JERSEY

---

CHRISTOPHER J. SCHILLER,

      Plaintiff,

      v.

STATE OF NEW JERSEY,
DAVID B. KATZ, P.J.S.C.,
SHEILA VENABLE, A.J.S.C.,
BRUCE D. BUECHLER, J.S.C.,
MEGAN J. GRITSMAN,
COLIN PORTHER, and
JOHN/JANE DOE 1-100,

      Defendants.

Docket No.:

Civil Action

**VERIFIED COMPLAINT**

---

## LOCAL CIVIL RULE 10.1 STATEMENT

    1.    The mailing and/or service addresses of the parties to this action are:

State of New Jersey
c/o Office of the Attorney General
Richard J. Hughes Justice Complex
25 Market St, Trenton, NJ 08611

Sheila A. Venable, A.J.S.C.
Dr. Martin Luther King, Jr. Justice Building
495 Dr. Martin Luther King, Jr. Blvd.
Newark, New Jersey 07102

David B. Katz, J.S.C.
Robert N. Wilentz Justice Complex – Family Courthouse
212 Washington Street
Floor 10.
Newark, New Jersey 07102

Bruce D. Buechler, J.S.C.
Robert N. Wilentz Justice Complex – Family
212 Washington Street
Floor 10
Newark, New Jersey 07102

Megan J. Fennessey (alias Megan J. Gritsman)
50 West Market Street
Suite 514
Newark, New Jersey 07102

Colin P. Porther
50 West Market Street
Newark, New Jersey 07102

## PARTIES

2.      The Plaintiff, Christopher J. Schiller ("Mr. Schiller"), is domiciled in the State of Jersey, residing in Bergen County, New Jersey, at all times relevant to this Complaint.

3.      Mr. Schiller has been and continues to be a self-represented *pro se* litigant in the underlying matter pending in the Superior Court of Essex County, Chancery Division, Family Part. ("Underlying Matter").

4.      The Defendant, Sheila Venable, A.J.S.C. ("Judge Venable"), is the Assignment Judge for the Superior Court of New Jersey, Essex County.

5.      Judge Venable was acting under color of state law as the chief judicial and administrative officer of the Superior Court, Essex County, in which capacity she was entrusted to act as the direct administrative agent of the Chief Justice of the Supreme Court of New Jersey, with the power and responsibility to supervise all other Defendants herein and ensure, among others, proper procedures and compliance of this vicinage with providing ADA accommodations in accordance with the Federal law.

6.      The Defendant David B. Katz, P.J.S.C. ("Judge Katz"), is the Presiding Judge for

the Superior Court of New Jersey, Essex County, Chancery Division, Family Part.

7.       Judge Katz was acting under color of state law as the chief judicial and administrative officer of the Superior Court, Essex County, Family Part, in which capacity he supervised or controlled one or more of the other Defendants herein, subject only to his supervision by defendant Venable.

8.       From July 5, 2022 to October 5, 2023, Judge Katz also directly presided over all proceedings in the Underlying Matter.

9.        The Defendant, Bruce D. Buechler, J.S.C. ("Judge Buechler"), is a Judge in the Superior Court of New Jersey, Essex County, Chancery Division, Family Part.

10.      Judge Buechler was acting under color of state law as the judge presiding over all proceedings in the Underlying Matter after Judge Katz transferred that role to him, in which capacity Judge Buechler supervised or controlled one or more of the Defendants herein, and/or acted in concert with one or more of the other individual Defendants.

11.      The Defendant Megan J. Fennessey (alias Megan J. Gritsman) ("Ms. Gritsman") is the Title II ADA Coordinator for the Superior Court of New Jersey, Essex County, in which capacity she was entrusted to ensure provisions of ADA Accommodations in Essex County under color or title of state law, subject to the supervision or control of her by one or more of the other Defendants herein.

6.       The Defendant, Colin P. Porther ("Mr. Porther") is the Equal Employment Opportunity/Affirmative Action Officer in the Superior Court of New Jersey, Essex County.  In this capacity, Porther is entrusted to investigate disability discrimination complaints made against any other court employees to ensure the absence of disability discrimination in the Superior Court of New Jersey, Essex County, subject to the supervision or control of him by one or more of the

other Defendants herein.

7.     The Defendant State of New Jersey is a State of these United States, which employs and controls all other defendants herein, and which is responsible for instituting all State policies and procedures to ensure equal and unhindered enjoyment by its citizen of all Constitutional rights, privileges, and immunities of the Citizen of the United States in all New Jersey courts, as well as the provision of non-discriminatory disability accommodations pursuant to ADA in all New Jersey Courts.

8.     The Defendant State of New Jersey is named herein not as a co-conspirator or a party liable for any misconduct alleged against all other defendants, but rather solely as a necessary and indispensable party for the purpose of implementation and enforcement of any declaratory and/or injunctive relief which may be granted by this Court.

## JURISDICTION AND VENUE

9.     This is a civil action brought against the Defendants by Mr. Schiller, seeking declaratory judgment and injunctive relief to enforce and declare his rights under the Fourteenth Amendment to the Constitution for the United States of America, pursuant to 42 U.S. Code § 1983, pursuant to 42 U.S.C. §1985, and pursuant to Title II of the Americans with Disabilities Act of 1990, 42 U.S.C. §§12133, 12181-12188, and to redress unlawful disability-based and retaliatory practices employed in the Superior Court of New Jersey, Essex County, aimed at and resulting in the deprivation of Mr. Schiller's Constitutional rights, privileges, and immunities, including but not limited to the deprivation of due process, equal protection of the law, and freedom of speech.

10.     The Court has jurisdiction over this action, which presents a federal question under Article III, §2 of the Constitution for the United States of America, pursuant to 28 U.S.C. §1331

and 2201-2202.

11.    Venue is proper in this Court under 28 U.S.C. §1391, because Mr. Schiller resides in this District, and all of the events giving rise to this claim occurred while he resided in the District.

## BACKGROUND

### 1. THE UNDERLYING MATTER:

12.    Mr. Schiller is a single father and the sole custodial parent of the minor children, "CJ" born in 2012, and "NS" born in 2016.

13.    Svetlana Shea ("Svetlana"), is the former spouse of Mr. Schiller, divorced from Mr. Schiller in 2019, and is the mother of CJ and NS.

14.    Adam Shea ("Adam") is the current spouse of Svetlana.

15.    The Underlying Matter is centered on the restraining order entered against Adam in March 2020.

16.    Pursuant to the restraining order, Adam has been barred from having any contact with the children, from the time he was Svetlana's boyfriend in March 2020 and until the present.

17.    Adam married Svetlana eight months after the restraining order had been entered.

18.    The acts of Adam, on which the restraints were predicated, have been the primary cause and source of Mr. Schiller's Post-Traumatic Stress Disorder ("PTSD").

19.    Additional acts by Adam of a similar nature to those on which the restraining order had been based, previously unknown, and in which Svetlana was complicit, that have since been revealed during the pendency of the Underlying Matter (hereinafter "New Acts").

20.    The Underlying Matter concerns efforts by Svetlana and Adam to lift the restraining order against Adam in order to allow Adam to have contact with and gain physical access to the children.

21.    The Underlying Matter is still pending.

### 2.    PLAINTIFF'S DISABILITIES SUBJECT TO ADA PROTECTIONS

22.    Mr. Schiller suffers from the following four (4) disabilities protected under the ADA:

    a.    PTSD, caused by Adam's acts underlying the restraining order and similar acts subsequently disclosed, and further propagated by Adam's relentless and continuous verbal abuse and harassment of Mr. Schiller in all Underlying Matter proceedings before defendants Katz and Buechler.

    b.    Attention Deficit Hyperactivity Disorder ("ADHD"), a chronic disability suffered by Mr. Schiller.

    c.    Severe cardiovascular disability that developed in July 2023 as a direct result of defendant Katz's judicial abuse of Mr. Schiller for over 1 year in all proceedings; defendant Katz's complicit facilitation of continuous verbal abuse of Mr. Schiller by Adam; and after New Acts by Adam have become known.

    d.    Complex combined effect of these disabilities, which compounds and magnifies the effects of each separate disability in any court appearances that involve Adam.

23.    Mr. Schiller provided seven letters from his treating physician, (hereinafter "Mr. Schiller's doctor"), to the Essex County Vicinage's ADA Coordinators, addressing each disability and their combined effect.

24.    The accommodations required to mitigate the effects of these disabilities have been established by Mr. Schiller's doctor to be appearances only by virtual means (i.e. Zoom) from the psychological safety of Mr. Schiller's home.

25.     New Jersey courts have been equipped to provide Zoom access to courts for all proceedings as an alternative to in-person appearances ever since the COVID shut-downs.

26.     In Mr. Schiller's case, due to his disabilities, Zoom appearances from the emotional and psychological safety of Mr. Schiller's home are medically necessary to reduce the separate and combined effects of ADHD, PTSD, and more recently cardiovascular disabilities, in the presence of Adam.

## DEFENDANT KATZ' WILLFUL AND RETALIATORY VIOLATIONS OF PLAINTIFF'S CIVIL, CONSTITUTIONAL, AND ADA RIGHTS

27.     On July 5, 2022, the Underlying Matter was transferred to the Essex County Superior Court from the Bergen County Superior Court as part of an Order of recusal of the Superior Court judge presiding over the Underlying Matter in Bergen County.

28.     From July 5, 2022, to October 5, 2023, Judge Katz presided over the Underlying Matter.

29.     Immediately upon assuming his presiding duties over the case, Judge Katz set out to deprive Mr. Schiller of due process and equal protection of the law and judicially abuse him by violating his Civil Rights, in retaliation for Mr. Schiller's recusal of the previous judge, and for his open criticism of Judge Katz's unethical conduct in the Underlying Matter.

30.     Judge Katz's judicial abuse and deprivation of due process and equal protection of the law included the following:

    a.  Intentional complicit inaction (despite numerous pleas by Mr. Schiller to Judge Katz to intervene), openly condoning Adam's continuous harassment, verbal abuse, discriminatory remarks, and disparagement of Mr. Schiller in over 100 instances, routinely including unrelated third parties, throughout the Underlying Matter.

    b.  Intentionally and baselessly denying Mr. Schiller's due process and equal protection rights by depriving him of non-discretionary discovery and

litigation rights expressly afforded to all litigants in New Jersey as a matter of law, such as the right to a trial, the right to discovery, and the right to depose his adversaries and a court-appointed expert.

c. Routine direct misrepresentations, purposeful omissions, distortions, and mischaracterizations of the record in numerous Essex County orders throughout Judge Katz's handling of the Underlying Matter to manufacture a false record adverse to Mr. Schiller or to justify adverse actions against Mr. Schiller.

d. Repeated attempts to question or limit Mr. Schiller's exercise of his federal ADA rights, as a tool of abuse and retaliation against Mr. Schiller, and to instill fear and apprehension in Mr. Schiller over being forced into the physical presence of Adam.

e. Forcing Mr. Schiller to disclose his disabilities and details of mitigating treatment on the record before his adversaries in violation of his federal HIPAA rights, and after that, forcing Mr. Schiller to address his adversaries' miscellaneous claims and requests raised for the first time without any prior notice, while Mr. Schiller was being in a state of trauma, impaired by medications, and cognitively incapable of proceeding as a result of Mr. Schiller learning about New Acts, of which Mr. Schiller had advised Judge Katz requesting an adjournment.

f. Nearly causing Mr. Schiller catastrophic injury or death on July 13, 2023, by repeatedly refusing to adjourn proceedings to permit Mr. Schiller leave to seek emergency medical assistance, while Mr. Schiller was suffering a hypertensive crisis during oral argument on the record, with his blood pressure rising from 170/110 to 226/114. Judge Katz forced Mr. Schiller to proceed as a *pro se* party to argue the matter in this condition, refusing to adjourn.

g. Efforts to steer an executive branch investigation and actions with regard to New Acts, and to influence the outcome of this investigation adversely to Mr. Schiller and his children.

h. Ordering and directing the Transcript Unit of the Essex County Superior Court to refuse providing Mr. Schiller with two duly requested transcripts of his own case proceedings.

i. Traumatizing and terrorizing Mr. Schiller for over a year by repeatedly manifesting an intention to lift the restraining order protecting Mr. Schiller's children, without any discovery or trial concerning the New Acts.

j. Inflicting financial hardship and public embarrassment upon Mr. Schiller, in violation of due process, by continuing the unlawful garnishment of Mr.

Schiller's wages for "child support," despite Judge Katz's own findings that Mr. Schiller has had no child support obligations for several years.

k.   Inflicting further financial hardship upon Mr. Schiller, in violation of due process, by refusing to enter a mandatory administrative order to implement Judge's Katz's own findings that Svetlana had and continues to have a child support obligation to Mr. Schiller, who has been and remains the sole physical custodial parent.

l.   *Sua sponte* issuing an order on February 12, 2024, despite no longer presiding over the Underlying Matter, with no notice to Mr. Schiller or an opportunity to be heard, increasing Mr. Schiller's child support payments to Svetlana, while knowing Mr. Schiller had no child support obligation to Svetlana, and thereafter ignoring Mr. Schiller's formal requests to correct it.

m.   Intentionally inflicting financial hardship upon Mr. Schiller by refusing to ensure his adversaries' compliance with their financial disclosure obligations, and financial obligations to court-appointed professionals, both required and ordered in the Underlying Matter.

n.   Refusing to recuse himself, despite a written request to do so based on all of the above being put to defendant Katz as a factually uncontroverted record mandating his recusal.

## DEFENDANT KATZ' "ADMINISTRATIVE" WITHDRAWAL FROM THE CASE TO AVOID FACING A MOTION TO RECUSE

31.   Immediately after Judge Katz nearly caused Mr. Schiller catastrophic injury or death on July 13, 2023, by denying Mr. Schiller's repeated requests for leave to seek emergency care due to a hypertensive crisis suffered on the record, counsel for Mr. Schiller demanded Judge Katz's recusal based on the above allegations against him, which had been certified by counsel upon review of all proceedings in the case.

32.   Judge Katz summarily refused to recuse, without factually contradicting any of the allegations laid out to him, claiming only that he subjectively believed he had been "fair and impartial."

33.   Fearing for his life after the July 13, 2023 episode before Judge Katz, Mr. Schiller sought leave to appeal from this denial of recusal.

34.    Judge Katz then wrote to the Appellate Division an "amplification" directly misrepresenting his denial of recusal as somehow not being a denial of recusal, and further claiming that if a formal motion to recuse were made, he would address it.

35.    On October 3, 2023, the Appellate Division declined to review the interlocutory appeal, citing policy disfavoring interlocutory appeals.

36.    On October 5, 2023, immediately after the Appellate Division declined to review the appeal, Judge Katz issued a *sua sponte* Order, stating: "Solely for administrative purposes, this matter is assigned to the Hon. Bruce Buechler, J.S.C."

37.    By doing so, Judge Katz ensured that:

   a.  He would not be required to address the allegations of judicial abuse leveled against him at all, because any motion to recuse him would now be moot;

   b.  He would not be prohibited from discussing this matter with a subordinate judge appointed "for administrative purposes only," or any other judge, whereas if Judge Katz were recused, he would be prohibited from any communications with any other judge regarding the Underlying Matter.

   c.  By avoiding recusal, Judge Katz would be able to continue manipulating and steering the Underlying Matter from behind the scenes through a subordinate judge.

## **DEFENDANT BUECHLER'S VIOLATIONS OF PLAINTIFF'S CIVIL RIGHTS**

38.    Upon assuming presiding over the case, Judge Buechler took actions and made statements on the record demonstrating his bias and conflict of interests in handling the Underlying Matter, evidencing his allegiance and subordination to Judge Katz.

39.    Among other improprieties, Judge Buechler continued condoning and facilitating Adam's communications made in and to the court, with unrelated third parties on copy, which were routinely verbally abusive to Mr. Schiller and mocked Mr. Schiller's disabilities.

40.    On November 20, 2023, Mr. Schiller moved to recuse Judge Buechler.

41.     Judge Buechler thereafter retaliated against Mr. Schiller by depriving Mr. Schiller of his ADA accommodations and conspiring with others to do so, as more fully set forth below.

42.     On April 2, 2024, Judge Buechler denied the motion to recuse without addressing the central issue, which was the appearance of impropriety regarding Judge Buechler's ability to handle the case impartially, in which his direct supervisor had been committing affirmative judicial abuse of Mr. Schiller and judicial misconduct for over a year.

43.     While the recusal motion was pending, Judge Buechler continued condoning attacks upon Mr. Schiller by Adam, mocking his disabilities and aggravating his disabilities, in numerous emails to the court copying unrelated third parties.

44.     In Judge Buechler's denial of recusal, which had been requested among others on this precise basis, Judge Buechler did not address this issue, except to falsely claim that he had sanctioned Adam for such discriminatory conduct related to Mr. Schiller's disabilities.

45.     Judge Buechler also falsely claimed in his denial of recusal that he had corrected his acknowledged violation of Mr. Schiller's HIPAA rights.

46.     During the pendency of the motion to recuse from November 20, 2023 to April 2, 2024, Judge Buechler ramped up his targeting of Mr. Schiller in retaliation for his motion to recuse.

47.     In doing so, Judge Buechler employed some of the same tactics previously utilized by Judge Katz to deprive Mr. Schiller of due process and equal protection of the law. Such tactics by Judge Buechler included the following:

   a.   manufacturing of a false record and making affirmative misrepresentations and intentional omissions on the record, including manufacturing a false record specifically to conceal his discrimination against Mr. Schiller's disabilities protected under the ADA;

   b.   refusal to case manage the Underlying Matter in the presence of the parties, instead managing the case only by "*sua sponte*" orders adverse to Mr. Schiller;

11

c. limiting Mr. Schiller's ability to seek any relief during the pendency of the motion to recuse by stating that any motion practice by Mr. Schiller during the pendency of the motion to recuse would be "incongruent" with his seeking to recuse Judge Buechler;

d. refusal to respond to Mr. Schiller's case management requests;

e. refusal to address Adam's continued disparagement, discriminatory remarks, and personal attacks on Mr. Schiller in Adam's communications to the court, which routinely included third parties unrelated to the Underlying Matter;

f. prejudicing Mr. Schiller's discovery rights upon a false basis that Mr. Schiller had purportedly failed to pursue discovery during Judge Katz's presiding over the Underlying Matter;

g. Inflicting financial hardship and public embarrassment upon Mr. Schiller, in violation of due process, by continuing the unlawful garnishment of Mr. Schiller's wages for "child support," despite his predecessor's prior findings that Mr. Schiller has had no child support obligations for several years.

h. Inflicting further financial hardship upon Mr. Schiller, in violation of due process, by refusing to enter a mandatory administrative order to implement his predecessor's findings that Svetlana had and continues to have a child support obligation to Mr. Schiller, who has been and remains the sole physical custodial parent.

i. Intentionally inflicting financial hardship upon Mr. Schiller by refusing to ensure his adversaries' compliance with their financial disclosure obligations, and financial obligations to court-appointed professionals, both required and ordered in the Underlying Matter.

j. setting out to deprive Mr. Schiller of his ADA rights, acting in concert with the other Defendants, thereby placing Mr. Schiller, a single father of two minor children, in fear of and in actual danger of catastrophic injury or death during court proceedings.

## DEFENDANTS' CONSPIRACY AND VIOLATIONS OF PLAINTIFF'S ADA RIGHTS

48.     As set forth above, Mr. Schiller suffers from three separate disabilities set forth above, and from a combined effect of these disabilities which magnifies each separate disability.

49.     Mr. Schiller's doctor addressed these disabilities in his letters to Essex County ADA Coordinators and Judges.

50.     The Underlying Matter involves acts by Adam, on which the restraining order against him had been predicated, as well as New Acts, which are at the core of Mr. Schiller's PTSD.

51.     As stated by Mr. Schiller's doctor, when Mr. Schiller's PTSD is triggered, it also significantly aggravates the symptoms of ADHD, as well as increases Mr. Schiller's risk of a critical-level cardiovascular emergency.

52.     In addition to Adam's acts on which the restraining order against him had been predicated, as well as New Acts, Adam triggered and magnified Mr. Schiller's PTSD by sending approximately 200 verbally abusive emails to date, many of them mocking Mr. Schiller's disabilities, which were directed to the court, usually with numerous third parties on copy, all of which was complicitly condoned by both defendants Katz and Buechler.

1.  **JUDGE BUECHLER'S UNILATERAL RETALIATORY DISMISSAL OF STANDING ADA ACCOMMODATIONS ON DECEMBER 14, 2023**

53.     On November 14, 2023, in recognition of then-standing ADA accommodations, Judge Buechler ordered a case management conference for November 27, 2023, with Mr. Schiller appearing remotely from his home.

54.     On November 20, 2023, Mr. Schiller filed a motion to recuse Judge Buechler.

55.     On November 27, 2023, Judge Buechler held the case management conference, with Mr. Schiller appearing remotely per his required ADA accommodation.

56.     On December 12, 2023, Svetlana and Adam filed an emergent motion falsely alleging "educational neglect" of the children by Mr. Schiller.

57.     On December 14, 2023, in retaliation for Mr. Schiller's recusal motion, Judge Buechler issued an order requiring Mr. Schiller to appear in person for oral argument of the "educational neglect" motion.

58.     No explanation or any forewarning of this was given to Mr. Schiller by Judge Buechler or any ADA Coordinator, despite an in-person appearance by Mr. Schiller being directly contrary to the ADA accommodations which Judge Buechler himself previously had recognized and acknowledged prior to Mr. Schiller's recusal motion.

59.     Upon information and belief, Judge Buechler had not consulted any ADA Coordinator prior to violating these accommodations.

60.     Mr. Schiller was simply summarily ordered by Judge Buechler to appear in person in the same courtroom as Adam, despite the medical proscription in Mr. Schiller's doctor's letters, advising that this would be catastrophic for Mr. Schiller's physical and mental health.

61.     This order to appear in-person, without any basis or any ADA Coordinator input, not only violated the ADA accommodations already known to and acknowledged by Judges Katz and Buechler, but it also violated federal ADA law.

62.     Such a unilateral dismissal of accommodations by a judge after those accommodations had been put in place upon a proper ADA review was discriminatory under the ADA, unconstitutional, and not in compliance with the internal process instituted by the New Jersey Judiciary for granting, denying, or modifying ADA accommodations.

### 2.   MR. SCHILLER'S CONTACT WITH THE ADA COORDINATOR UPON RECEIPT OF JUDGE BUECHLER'S ORDER

63.     Upon receipt of Judge Buechler's order, Mr. Schiller immediately contacted Defendant Gritsman, a new ADA Coordinator.

64.     Upon review of the matter and after speaking with Mr. Schiller, Ms. Gritsman advised on December 22, 2023, that "As to the request to appear virtually for the next scheduled appearance, ordered today to take place on January 16th, 2024, I have recommended that you be permitted to attend the court proceeding virtually."

65.     Nothing further was heard from the court or Ms. Gritsman until one business day before the scheduled hearing, when Ms. Gritsman emailed after court hours on January 11, 2024 a denial of accommodations letter to Mr. Schiller, forcing him to appear in-person.

### 3.  STATED BASIS FOR THE DENIAL OF ACCOMMODATIONS

66.     The denial of accommodations contains reasons and statements by Ms. Gritsman which she never discussed with Mr. Schiller, and the origin of which was not Ms. Gritsman herself.

67.     From December 22, 2023, to January 11, 2024, there was no indication from Ms. Gritsman of any shift in her position from recommending accommodations on December 22 to her denial of the same accommodations three weeks later.

68.     The reasons for the denial set forth in Ms. Gritsman's letter evidence bad faith pretextual and discriminatory action in direct violation of ADA.

69.     Ms. Gritsman's letter based the denial of ADA accommodations on what she termed an "unsuccessful" appearance on November 27, 2023, in which she purported that "the hybrid appearance was challenging as the parties had a hard time hearing each other, they spoke over each other multiple times and the Judge had to remind them several times to abide by the direction of the court and for the purpose of keeping an accurate court record."

70.     This characterization of this appearance as "unsuccessful" due to Mr. Schiller's ADA accommodation was false and pretextual.

71.     During the seventy-minute conference, Mr. Schiller inadvertently interrupted his adversary twice:  once when he mistakenly believed the judge was asking the question to all parties, and another time when the adversary was lying on the record about acts which trigger Mr. Schiller's PTSD.

72.     These "interruptions" consisted only of a few words and had no impact on any "success" of the November 27, 2023 appearance.

73.     Inadvertent interrupting is expressly set forth in Mr. Schiller's doctor's letters as one of Mr. Schiller's symptoms of ADHD.

74.     As amply described by Mr. Schiller's doctor in his August 15, 2022 and March 9, 2023 letters, Mr. Schiller's symptoms of ADHD, which are "mild to moderate" under the normal conditions outside the courtroom, become exacerbated by stress and trauma.

75.     Denying reasonable accommodations to a person on the basis of the very symptoms of the disability requiring those accommodations in the first place constitutes discrimination and retaliation under the ADA.

76.     The record shows that Ms. Gritsman's "hard time hearing each other" comment was caused by the courtroom technology setup which was promptly resolved by Judge Buechler directing Mr. Schiller's adversaries to move closer to the Zoom-connected microphone.

77.     Ms. Gritsman's January 11 denial letter failed to acknowledge or address Mr. Schiller's trauma and its impact on his ADHD symptoms and cardiovascular symptoms.

78.     Even if Ms. Gritsman thought that ADHD somehow could not be accommodated due to Mr. Schiller's "interruptions," it was discriminatory and retaliatory on this basis alone to deny ADA accommodations for Mr. Schiller's PTSD and trauma-induced critical-level cardiovascular risks.

79.     In sum, Ms. Gritsman's reasons for the denial of accommodations were pretextual, illogical, and both factually and medically baseless.

**4.   JANUARY 12, 2024 CONDUCT BY DEFENDANT GRITSMAN EVIDENCING HER COLLUSION WITH DEFENDANTS BUECHLER AND/OR KATZ AND ABSENCE OF HER OWN INDEPENDENCE IN GRANTING ADA ACCOMMODATIONS**

80.     Upon receipt of Ms. Gritsman's after-hours January 11 denial letter, Mr. Schiller and his attorney immediately contacted her on January 12, 2024 to discuss this denial, since Mr. Schiller's appearance was scheduled for the morning of the next business day (after a three-day holiday weekend).

81.     In speaking with Mr. Schiller and his attorney on Friday, January 12, 2024, the ADA Coordinator's conduct and statements corroborated and enhanced the appearance of bad faith, intentional discrimination, and retaliation, as follows:

   a.   Ms. Gritsman refused to answer direct questions regarding who the ultimate decision maker was to grant or deny these accommodations, and whether it was her versus Judges Buechler or Katz.

   b.   Ms. Gritsman confirmed that she had communicated with Judge Katz regarding Mr. Schiller's ADA accommodations before issuing her denial letter.

   c.   Ms. Gritsman refused to answer direct questions about what information she received and from whom between December 22 and January 11 that made her change her mind from recommending the requested accommodations on December 22 to denying them one business day before the court appearance on January 11.

   d.   Ms. Gritsman refused to permit or recommend at least a one-time accommodation to give Mr. Schiller sufficient time to appeal from this denial and in the interim grant him equal access to the court for the January 16 appearance on a one-time basis.

82.     Based on the above discussion with Ms. Gritsman, Mr. Schiller's attorney contacted the Administrative Office of New Jersey Courts and Ms. Gritsman's direct supervisor, requesting

answers to questions which Ms. Gritsman had refused to answer, and further requesting a written procedure manual governing ADA accommodation in the New Jersey Judiciary.

83.     No response and no manual were ever provided by the Administrative Office of the Courts or Ms. Gritsman's supervisor, despite numerous follow-ups.

**5.    DEFENDANT BUECHLER'S FURTHER RETALIATORY AND DISCRIMINATORY CONDUCT POST-DENIAL OF ACCOMMODATIONS BY DEFENDANT GRITSMAN**

84.     Upon receipt of the denial and revoking of Mr. Schiller's ADA accommodations from Ms. Gritsman, Mr. Schiller requested alternative accommodations from Judge Buechler.

85.     These alternative accommodations included:

   a.  to consider the pending matter on the papers already submitted, without an oral argument;

   b.  to permit Mr. Schiller to appear virtually one time for the appearance next business day as a one-time accommodation in light of the last-minute denial of accommodations, leaving inadequate time to appeal the denial;

   c.  to adjourn the appearance, so that Mr. Schiller could have sufficient time to prepare a proper ADA appeal to the Assignment Judge, Defendant Venable.

86.     Judge Buechler denied all these alternative accommodation requests.

87.     Left with no other recourse, Mr. Schiller's attorney submitted an ADA appeal to Judge Venable on Friday afternoon, in advance of Mr. Schiller's court appearance scheduled for the next business day.

88.     Due to the unreasonable time afforded for an appeal, Judge Buechler's refusal of any alternative accommodations or an adjournment to appeal Ms. Gritman's denial of accommodations, and her refusal to answer questions pertinent to this appeal, defendants Buechler and Gritsman impaired and prejudiced Mr. Schiller's ability to seek an ADA appeal, in violation of his ADA, due process, and equal protection rights.

89.     Mr. Schiller's ADA appeal submitted to defendant Venable described  the appearance of collusion and impropriety entailed in Ms. Gritsman's conduct set forth above, and asked to either grant Mr. Schiller ADA accommodations for the upcoming appearance; or in the alternative, to administratively adjourn that appearance in order to permit an adequate time to prepare, submit, and decide a proper ADA appeal; or in the alternative to hold a hearing before Judge Venable with Ms. Gritsman present to answer questions which she had refused to answer.

90.     At 2:42 p.m. that Friday afternoon, Judge Venable's law clerk advised that "Judge Venable is currently on the bench and may be unavailable for the rest of the day."

91.     At 4:30 p.m. Judge Venable issued a letter denying the ADA appeal by block quoting Ms. Gritsman's January 11 letter, rubber-stamping Ms. Gritsman's decision, and denying relief in the alternative, such as an adjournment or a hearing with Ms. Gritsman present.

92.     Further discrimination by Judge Buechler followed.

93.     On the day of the appearance, since Mr. Schiller was incapable of appearing in person due to his disabilities, Mr. Schiller had an attorney file a notice of limited appearance on Mr. Schiller's behalf for oral argument and appear in person for oral argument, as ordered.

94.     Judge Buechler refused to permit Mr. Schiller's attorney to represent him at oral argument, even by way of ADA accommodation, and again refused to allow Mr. Schiller to appear virtually.

95.     In doing so, Judge Buechler made false representations on the record, such as that a "Notice" of appearance was a "Request" subject to a discretionary grant or denial, as opposed to a mere "Notice," and further misrepresented that Mr. Schiller had not requested any adjournment from defendant Buechler based on the ADA Accommodations denial to properly appeal it.

96.    In refusing to accept counsel's representation of Mr. Schiller at this oral argument, Judge Buechler expressly stated on the record that his refusal to hear from counsel was somehow related to Mr. Schiller's motions to recuse him and the previous motion to recuse Judge Katz.

97.    Judge Buechler falsely claimed that there would be "confusion" about whether to send any notices to counsel or to Mr. Schiller *pro se* in any further proceedings.

98.    Such reasoning was pretextual, as it ignored counsel's Notice of Limited Appearance, which specifically had stated that the scope of this representation was limited only to the oral argument on that date, and it further ignored the same representation of counsel on the record.

99.    Having pretextually refused every reasonable accommodation to provide Mr. Schiller with equal access to the court, Judge Buechler held oral argument without Mr. Schiller's presence or participation, despite his counsel's in-person appearance for oral argument and presence in the courtroom.

100.    As a result, Mr. Schiller was denied equal access to the court because of his disability, and his Constitutional rights were violated yet again.

101.    After the oral argument held in Mr. Schiller's absence, Judge Buechler manufactured a false and misleading record, once again making affirmative misrepresentations and intentional omissions about the above stated appearance in his order dated January 17, 2024, in an attempt to conceal his discrimination against Mr. Schiller's disabilities protected under the ADA and place the blame for defendant Buechler's own discrimination upon its victim, Mr. Schiller.

**6.** **Defendants Gritsman and Venable's further discriminatory and unconstitutional conduct in violation of ADA, due process, equal protections, and Civil rights.**

102.    Following the January 16, 2024 appearance, Mr. Schiller submitted Mr. Schiller's doctor's January 15, 2024, letter, in which Mr. Schiller's doctor exposed the illogical and baseless nature of the accommodations denial by Ms. Gritsman.

103.    Mr. Schiller's doctor advised Ms. Gritsman as follows:

Mr. Schiller's exposure to Adam Shea, in any environment, let alone one as inherently stressful as a courtroom, serves as a trigger but also causes symptoms of PTSD (such as severe emotional and physical distress) to present with high acuity. Forcing Mr. Schiller to appear in person in the physical presence of Adam Shea, his symptoms of PTSD would be so severe that Mr. Schiller's capacity for rational cognitive functioning would be, at a minimum, considerably diminished, if not completely negated. Moreover, his ADHD symptoms would become exponentially aggravated. Further, the prescribed medications that Mr. Schiller would be required to take before such a proceeding to manage his PTSD symptoms would significantly impede his ability to represent himself clearly and competently in legal proceedings.

104.    Mr. Schiller's doctor, again, fully explained the relationship between Mr. Schiller's disabilities and stated that restoring Mr. Schiller's ADA accommodations was medically required to avoid inflicting physical and emotional harm upon him, including placing Mr. Schiller "at a significant risk of a cardiac or hypertension-related acute emergency during such proceedings."

105.    Following receipt of this new letter, Ms. Gritsman emailed Ms. Schiller, asking him to provide a HIPAA release purporting to have some undisclosed questions for Mr. Schiller's doctor.

106.    The HIPAA release form provided by Ms. Gritsman stated that, "…eligibility, if any, for an accommodation pursuant to the Americans with Disabilities Act and/or New Jersey Law Against Discrimination will not be conditioned upon my [Mr. Schiller's] authorization of this disclosure."

107.     Based on this statement, the seven letters from Mr. Schiller's doctor covering ADA accommodations entitlement under the ADA, and due to other indications of the ongoing collusion, retaliation, and discrimination, Mr. Schiller objected, advising that Mr. Schiller's doctor left no unanswered questions, and asked Ms. Gritsman to email her questions to Mr. Schiller, so that he could forward them to Mr. Schiller's doctor himself.

108.     Mr. Schiller further explained that the ADA process must be transparent, and Mr. Schiller's doctor would address any additional questions in writing to ensure an accurate record.

109.     In direct response to this, Ms. Gritsman did not provide any questions for Mr. Schiller's doctor, but rather, instead, Ms. Gritsman advised that she now could not even consider the request for ongoing accommodations at all, because there was no court appearance scheduled, and accommodations could only be considered on a "case by case" basis, which her email represented meant an "appearance by appearance" basis..

110.     This advice from Ms. Gritsman was once again pretextual, as Mr. Schiller had already explained to Ms. Gritsman that he had emergent motions to file and could not file these in the absence of accommodations, because Judge Buechler now required Mr. Schiller to appear in person and refused to permit counsel to appear for Mr. Schiller on a limited basis.

111.     Further, Ms. Gritsman's statement that no appearances were scheduled was false, as a trial date was set in the January 17, 2024 Order entered after the January 16, 2024 hearing unconstitutionally and discriminatorily held in Mr. Schiller's absentia.

112.     Ms. Gritsman's advice that accommodations could not be considered on a permanent basis further directly contravened Mr. Schiller's doctor's' medical opinion in his January 15, 2024, letter which had expressly advised:

> Lastly, this accommodation must be permanently set in place and not be subject to any change on an appearance-by-appearance basis or on a judge-to-judge basis.

22

PTSD is at a minimum a long-term condition, and ADHD is chronic in nature. Since the cause of this PTSD is based on the events being dealt with in these court proceedings, and since the court proceedings involve the very person who perpetrated the traumatizing events, Mr Schiller would experience acute and incapacitating symptoms of PTSD any time he would be forced to appear in these proceedings in person, irrespective of whether it occurs next week, next month, or next year. For the same reasons, Mr. Schiller's ADHD symptoms would be worse in such in-person proceedings chronically, irrespective of any specific appearance, judge, or time frame.

113.    Once again, Ms. Gritsman discriminatorily denied the requested accommodations on a pretextual basis that the New Jersey Judiciary was purportedly unable to evaluate this request for accommodations, despite Mr. Schiller's doctor expressly prescribing this request as medically necessary.

114.    The shifting reason of this denial from the previous reasons and communications further underscores its self-evident pretextual and discriminatory nature.

115.    Mr. Schiller's accommodations were not on a case-by-case basis when they were previously set in place and continued for 1.5 years, until Judge Buechler unilaterally dismissed them in his December 14 order, or when Ms. Gristman purportedly had questions for Mr. Schiller's doctor after receiving his January 15, 2024 letter.

116.    On February 26, 2024, Mr. Schiller, through counsel, submitted a second ADA appeal to Judge Venable, now supplemented by Mr. Schiller's doctor's January 15, 2024 letter and communications with Ms. Gritsman following it.

117.    Judge Venable was advised that Mr. Schiller had been and remained unable to seek any emergent relief until his ADA accommodations were restored, because he could not appear in person, and he had been deprived of equal access to the courts since January 2024.

118.    Judge Venable was asked to re-institute the required accommodations and transfer venue *sua sponte* due to clear improprieties and discrimination suffered by Mr. Schiller in Essex County.

119.    On March 8, 2024, Judge Venable denied the second ADA appeal and stated she found no reason to *sua sponte* transfer venue of the Underlying Matter.

120.    Judge Venable's reasons for the denial were just as pretextual and discriminatory as the previous denials, and further shifting in comparison with previous reasons.

121.    Judge Venable again rubber-stamped Ms. Gritsman's basis for the denial, which was contrary to the medical recommendations of Mr. Schiller's doctor regarding permanency of Mr. Schiller's symptoms.

122.    Judge Venable articulated new reasons for the denial as follows: "Providing Mr. Schiller with a 'permanent' ADA Accommodation will not be 'reasonable' because it would fundamentally alter the nature of court proceedings in the [Underlying Matter] and provide undue hardship upon the Judiciary, since the court considers reasonable accommodations on a case-by-case basis, based on the circumstances presented."

123.    In justifying this discriminatory and pretextual denial, Judge Venable further made a false statement that on November 27, 2023, "Mr. Schiller's ADA accommodation fundamentally altered the nature of the court proceeding, which did not allow the court process to take place in an efficient and effective manner."

124.    This statement was false, as the transcript of the November 27, 2023 appearance definitively reflects a complete absence of any "fundamental alteration" of any proceeding due to ADA accommodations.

125.    Besides being false, the statement was also discriminatory and retaliatory, because it used Mr. Schiller's symptoms of ADHD to remove his accommodations for that ADA protected condition, as well as for other conditions of PTSD and cardiovascular disabilities.

126.    On March 25, 2024, Mr. Schiller submitted another request to Ms. Gritsman for reasonable accommodations under ADA Title II for an already scheduled evidentiary hearing.

127.    Mr. Schiller requested, among other reasonable accommodations, to appear and participate virtually, stating:

> I am requesting to only appear and participate in the evidentiary hearing virtually. I am physically, mentally, and emotionally **incapable** of appearing and participating in person – and the Court requiring me to appear or participate in person goes against medical advice from my treating Mr. Schiller's doctors. I want to reiterate that this is not a situation where I am unwilling to appear and participate in person – I am incapable of appearing and participating in person due to medical conditions protected by the ADA.

[emphasis in original]

128.    In his March 25, 2024 request, Mr. Schiller further advised Ms. Gritsman that he could only meaningfully participate in discovery or the evidentiary hearing if Ms. Gritsman granted the requested accommodations – and absent granting the requested accommodation, Mr. Schiller would suffer additional harm to his physical and mental health.

129.    Mr. Schiller also stressed the importance of Ms. Gritsman's prompt attention and decision on the requested accommodations, due to scheduled court dates and discovery deadlines.

130.    After several follow-up emails by Mr. Schiller, on Friday April 19, 2024, Ms. Gritsman emailed a letter dated April 18 to Mr. Schiller and denied his request for accommodations for the same pretextual and discriminatory reasons stated in her denial letter dated January 11, 2024.

131.    Such reasoning does violence to the record and ADA law.

132.    Prior to the Underlying Matter being transferred to Essex County, the Bergen County Family Court conducted a seventeen-day evidentiary hearing on similar issues related to the Underlying Matter entirely remotely, with all parties and witnesses appearing via Zoom.

133.    The Essex County Family Court (at Judge Buechler's judicial discretion for his convenience) held five hearings via Zoom, all occurring after the alleged "unsuccessful" November 27, 2023 virtual appearance Ms. Gritsman cited as the basis for denying Mr. Schiller's ADA accommodations to appear virtually.

134.    Upon Mr. Schiller's counsel informing Ms. Gritsman of the same, and asking her to reconsider her denial, Ms. Gritsman refused to restore Mr. Schiller's ADA accommodations to ensure his equal access to the courts.

135.    On April 16, 2024, for reasons unrelated to the ADA or Ms. Gritsman, Judge Buechler, *sua sponte*, adjourned the evidentiary hearing to commence on August 1, 2024, expressly reiterating his order for Mr. Schiller to appear in-person throughout the scheduled proceedings.

## 7. DEFENDANT PORTHER'S DISCRIMINATORY CONDUCT IN VIOLATION OF ADA, DUE PROCESS, EQUAL PROTECTIONS, AND CIVIL RIGHTS.

136.    Mr. Porther is a person in Essex County Superior Court charged with the internal investigation of discrimination and retaliation claims made against court employees.

137.    On February 12, 2024, a comprehensive internal complaint alleging discrimination, retaliation, and collusion by Defendants Gritsman, Katz, and Buechler was submitted to Mr. Porther.

138.    Defendant Porther had advised that upon receipt of the complaint, he would review it and then schedule a call with Mr. Schiller and his counsel.

139.    On February 15, 2024, Mr. Porther acknowledged receipt of the complaint, but never subsequently reached out to Mr. Schiller or his counsel to discuss any matters contained therein.

140.    Several follow-ups later, Mr. Porther advised Mr. Schiller that his review of the complaint along with the New Jersey Judiciary's Administrative Office of the Courts "revealed no evidence of discrimination and retaliation regarding your requests for an ADA accommodation."

141.    Based upon the evidence presented to Mr. Porther, such a conclusion could not be reached in good faith or upon a diligent review by any independent investigator charged with investigating disability discrimination.

142.    Upon information and belief, instead of performing his independent function to review and investigate such complaints in good faith, Mr. Porther instead used a pretext of his role in the New Jersey Judiciary to only validate, perpetuate, and cover up clear ongoing discrimination.

143.    Since the revocation of his accommodations, Mr. Schiller has not been able to file any emergent applications because of the denial of his medically necessary accommodations to appear only virtually and only from his home, out of fear that any applications would result in him being either forced to appear in person, which would be catastrophic to him, or lose his rights by non-appearance with an admonishment prejudicial to him, such as what occurred on January 16, 2024.

WHEREFORE, the Plaintiff, Christopher J. Schiller, demands declaratory judgment and injunctive relief against the Defendants, jointly and severally, attorney fees, costs of suit, and such other and further relief the court deems equitable and just.

WHEREFORE, the declaratory relief requested herein consists of declaring that:

1)  each of the defendants separately, or acting in concert and/or collusion with one or

more other defendants, or with the aiding and abetting by one or more other defendants, as may be applicable, have discriminated and/or retaliated against Mr. Schiller in violation of the ADA Title II; and

2) Each of the defendants separately, or acting in concert and/or collusion with one or more other defendants, or with the aiding and abetting by one or more of the other defendants, as may be applicable, violated Mr. Schiller's Constitutional and/or civil rights, including but not limited to First Amendment, Due Process of Law and Equal Protection of the Law.

WHEREFORE, the injunctive relief requested herein consists of:

1) requiring the State of New Jersey to take all steps necessary to transfer the Underlying Matter to a new venue in light of the rampant violations of Mr. Schiller's Civil Rights, including his Constitutional rights of due process, equal protection of the law, and free speech, and/or in light of the collusive discrimination perpetrated against Mr. Schiller by multiple individuals acting under color of the law at the top judicial and administrative level of the Essex County Superior Court; and

2) to take all steps necessary to provide Mr. Schiller in the new venue with the ADA Accommodations to which he is entitled, including but not limited to specifically the accommodation to appear for all proceedings in the Underlying Matter only virtually, only from his home, and without any prejudice or retaliation against him for his inadvertent interrupting due to his ADHD symptoms; and

3) to institute such internal controls and procedures which would ensure proper, diligent, and good faith reviews of all internal disability discrimination complaints and ADA appeals by persons not connected with the alleged perpetrators of such discrimination,

in order to ensure independency, transparency, and good faith compliance with the ADA in New Jersey courts; and

4) to require production of the internal manual governing ADA Accommodations to the users of New Jersey Courts upon request, so that persons seeking those accommodations can be guided by a transparent and impartial procedural description which they are entitled to follow and expect compliance with instead of *ad hoc* after-the-fact denials on previously unknown, vague, and shifting bases; and

5) to require appropriate accountability for the defendants' acts of disability discrimination, retaliation, as well as acts taken in furtherance and perpetuation of discrimination and/or retaliation, and those taken in furtherance of the cover-up of discrimination and/or retaliation, to which the plaintiff, Mr. Schiller, has been subjected; and

6) to require appropriate accountability for the defendants' acts in violation of Mr. Schiller's Civil Rights, including but not limited to acts in violation of the Constitutional guarantees of due process, equal protection of the law, and free speech, acts in furtherance and perpetuation of said violations against Mr. Schiller, and acts taken in furtherance of covering up and concealing said violations, to which the plaintiff, Mr. Schiller, has been subjected; and

7) to require appropriate steps to sanitize all court records created by the liable defendants from rampant misrepresentations, distortions, and intentional omissions infused into such records by the defendants; and

8) to enjoin the defendants from any further participation in the Underlying Matter in any capacity; and

9) to enjoin defendants Katz, Buechler, and Venable from any communications with any other judicial or support staff regarding the Underlying Matter or Mr. Schiller;

10) to require extension of all deadlines to Mr. Schiller in the Underlying Matter equal to the period of time from the denial of his accommodations to the time of the injunctive relief to restore them, in mitigation of the prejudice inflicted upon him by depriving him equal access to the courts in the Underlying Matter during this time period.

## RESERVATION OF RIGHTS

Plaintiff reserves his right to further amend this Verified Complaint, upon completion of investigation and discovery, to assert any additional claims for relief against Defendants or other parties as may be warranted under the circumstances and as allowed by law.

## PLAINTIFF' DEMAND FOR JURY TRIAL

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiff demands trial by jury in this action of all issues so triable.

## LOCAL RULE 11.2 CERTIFICATION

Pursuant to Local Civil Rule 11.2, the undersigned certifies that the matter in controversy relates factually and procedurally to the case is entitled *Svetlana Shea and Adam Shea v. Christopher J. Schiller,* which is currently pending in the Superior Court of Essex County, Chancery Division, Family Part, Docket No. FM-07-111-23.

Respectfully submitted,

MICHAEL A. GOROKHOVICH, ESQ.
Attorney #  025261993
4 Pine Court
Blackwood, New Jersey 08012
(908) 220-8008
michael@gorokhovich.com
Attorney For Plaintiff

Dated:  May 9, 2024

## <u>CERTIFICATION OF VERIFICATION</u>

     I, CHRISTOPHER J. SCHILLER, of full age, hereby certify as follows:

1.  I am the Plaintiff named in the Verified Complaint set forth above.

2.  The allegations of the Verified Complaint are true to best of my personal knowledge and belief.

3.  I understand that if any of the allegations set forth in the attached Verified Complaint are found to be willfully false, I am subject to punishment.

*Christopher J. Schiller*
CHRISTOPHER J. SCHILLER

DATE:  May 9, 2024